**Wilfred T. VAN NORDEN**

v.

**John W. GARDNER, Secretary of Health, Education, and Welfare.**

**Civ. A. No. 3205.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

April 14, 1966.

Benjamin Harvey, Legal Aid Society of Baton Rouge, Inc., Baton Rouge, La., for plaintiff.

Frederick W. Veters, Asst. U. S. Atty., New Orleans, La., for defendant.

WEST, District Judge.

On July 18, 1964, plaintiff's application to establish a period of disability and for disability insurance benefits under Sections 216(i) and 223 respectively of the Social Security Act, 42 U.S.C.A. 416(i) and 423, as amended, was rejected by the Social Security Administration of the United States Department of Health, Education and Welfare. The plaintiff, disagreeing with this determination, requested a hearing before the Hearing Examiner. This hearing was held on October 8, 1964, as a result of which plaintiff's claim was again rejected. He then applied to the Appeals Council for a review of the Hearing Examiner's decision, and this application for review was also denied on March 24, 1965. The present suit followed.

After a careful review of the entire record in this case, and being mindful of the fact that this Court cannot, and does not, try these Social Security cases *de novo*, but on the contrary, considers only whether or not the decision of the Secretary is supported by substantial evidence, Ward v. Celebrezze, 311 F.2d 115 (Cir. 5, 1962); Clinch v.

Celebrezze, 328 F.2d 778 (Cir. 5, 1964); and Aldridge v. Celebrezze, 339 F.2d 190 (Cir. 5, 1964), it is the opinion of this Court that the Hearing Examiner erred in his conclusion and must be reversed.

The plaintiff is forty-seven years of age, and has a work record of twenty years with the Ethyl Corporation in Baton Rouge, Louisiana. For twenty years, terminating on March 25, 1963, the plaintiff worked for this corporation and performed duties involving operating valves, reading gauges, operating electric cranes, climbing stairs, walking, reaching, and bending, and lifting up to fifty pounds. While the evidence shows that he has had back trouble off and on for twelve years, his difficulties were never disabling. However, the difficulty with his back became progressively worse, and on July 25, 1961, Dr. Joseph Sabatier performed an operation whereby he removed a ruptured disc between the fifth lumbar vertebra and the first sacral vertebra. Then, on July 10, 1963, Dr. Moss Bannerman performed another operation resulting in a spinal fusion in the area involved.

The Hearing Examiner had before him the testimony, in report form, of several doctors. For instance, Dr. George D. Dicks, an Ethyl Corporation doctor, testified that the plaintiff had not been able to work, except for one day, since March 16, 1963. His report was rendered on March 11, 1964. He reported that his examination resulted in a diagnosis of chronic low back pain following disc and fusion surgery; possible severe psychogenic overlay. He stated that the plaintiff was not able to do more than walk or sit two to three hours a day. It was his opinion that a psychogenic factor might be involved, but he reported that Dr. Jackson of Ochsner's Clinic disagreed with that conclusion and believed that all of plaintiff's trouble is organic in nature. He recommended retirement due to physical disability, which recommendation was followed by Ethyl Corporation.

On February 3, 1964, the plaintiff was examined by Dr. John D. Jackson, a neurosurgeon at Ochsner's Clinic. It was his recommendation that plaintiff undergo another myelogram to explore the possibility of a recurrent disc problem.

On March 24, 1964, the plaintiff was again examined by Dr. Joseph Sabatier, the same doctor who had performed the disc operation in July of 1961. At the time of this examintion, Dr. Sabatier noted that the plaintiff was suffering from joint pains and swelling, and concluded that his condition was not static but was "progressively downhill." He examined the plaintiff again on April 27, 1964, and found that the plaintiff was suffering from pain in his back, fingers, knees, shoulders, and neck, and that he had definite limitation of motion in his knees, neck, fingers, and back, and that he had swelling in all of his joints. He found him to be house-confined at least fifty per cent of the time and again stated that his condition was not static but was "downhill." On May 27, 1964, Dr. Sabatier again found the same symptoms and concluded that the condition had now become static with no improvement to be expected. He did mention in this report that the plaintiff could do "mild sedentary work," but this reference to his ability to work is rather unimpressive in view of his overall report covering his three examinations.

The plaintiff was then examined on April 15, 1964, and again on June 16, 1964, at the request of the Government, by Drs. Halley and Cracraft. The report of the first examination on April 15, 1964, referred to the two operations undergone by the plaintiff, and stated that clinically speaking there was no motion of the back present. The examining doctor found that there was pain at forty-five per cent lateral leg raising, but the doctor believed that the plaintiff exaggerated his symptoms. He concluded that the plaintiff "probably could not do heavy work but should be able to do moderately heavy work, and certainly should be able to do sedentary work without difficulty." This doctor found most findings normal, and the report makes no mention whatsoever of any arthritic

condition or swelling of joints. Following the examination of June 16, 1964, Dr. Halley found that "motion in the back is good but the patient complains of some pain on extremes of motion in all directions." He further found "no visual abnormality * * * about the hands, arms, shoulders, legs, or feet." He found that all motions were normal and concluded that there is "no bony pathology" and that the claimant has only a ten to fifteen per cent disability as a result of the removed disc and the spinal fusion.

And lastly, the Hearing Examiner had before him the testimony of Dr. Moss M. Bannerman, the doctor who had performed the spinal fusion in July of 1963. His report of examination of August 10, 1964, stated that the plaintiff had generalized arthritis involving his entire body, particularly his spine, hips, and neck, as well as his right knee, elbow and ankle. Dr. Bannerman found that the plaintiff had intermittent recurrent swelling and that when the swelling was present, he was unable to perform any activity that would require standing on his feet. He concluded that while the plaintiff might someday go on to recovery, he was nevertheless, at the present time, totally disabled insofar as being employable is concerned.

The Hearing Examiner also had before him the testimony of Dr. Russell E. Helmick, a vocational consultant employed by the Government. Dr. Helmick recognized the fact that the plaintiff was in constant pain, but, without any evidence as far as this Court can see to prove it, he simply stated that "I could conceive of this gentleman working as a private policeman," and "I can also see this gentleman working as a ticket taker at some amusement place or some sports event," and "I would emphasize that these jobs are available in this community." Dr. Helmick was unable to explain why the plaintiff had been refused vocational rehabilitation.

In addition to the above testimony, the Hearing Examiner had before him the testimony of the plaintiff's wife and one of his neighbors, both of whom testified that this plaintiff could not so much as put on his shoes without the assistance of his wife. There was no evidence to refute this testimony. Furthermore, the plaintiff himself testified, without having been contradicted by any other testimony, that he simply was unable not only to work, but to take care of his own personal needs such as dressing himself, etc., without the assistance of his wife.

While the Court is aware that the reports of Drs. Halley and Cracraft indicate that this plaintiff should be able to work, nevertheless, the Court is convinced that this testimony is so totally and completely out of line with the preponderance of the evidence in this case that it should not have been a determining factor in the Hearing Examiner's decision.

■■ In view of the overall evidence in this case, it is the opinion of this Court that the Hearing Examiner did not have before him substantial evidence to support his conclusion that this plaintiff had failed to establish that he has impairments, either singularly or in combination, of such severity as to preclude him from engaging in any substantial gainful activity. It is the opinion of this Court that the plaintiff did establish by a preponderance of the evidence that he had such impairments and that there was no substantial evidence on which to base a contrary conclusion.

For the reasons herein stated, the decision of the Hearing Examiner rejecting the plaintiff's application to establish a period of disability and for disability insurance benefits under the Social Security Act is reversed and set aside, and this case is remanded to the Secretary for further proceedings in accordance with the views herein expressed.